INDUSTRIAL NATIONAL BANK OF RHODE ISLAND *vs.*
LEO'S USED CAR EXCHANGE, INC.

Hampden. November 10, 1972. — January 11, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Bills and Notes,* Holder in due course. *Bona Fide Purchaser. Conflict of Laws. Words,* "Good faith."

Under the Uniform Commercial Code, G. L. c. 106, § 1–105 (1), Massachusetts law applied to a transaction involving checks drawn by a corporation here on a bank here payable to a seller of automobiles in Connecticut and cashed by a Rhode Island bank, in the absence of any agreement otherwise by the parties. [799–800]

In an action by a bank on checks drawn on another bank by the defendant corporation and payable to a seller of automobiles and cashed by the plaintiff on presentation by an authorized officer of the seller and forwarded to the second bank for collection, which refused to honor the checks because payment thereof had been stopped, evidence that there had been no compliance with a rule of the plaintiff that its manager must approve any corporate checks drawn on another bank before being cashed by a teller did not warrant a finding that the plaintiff had not taken the checks "in good faith" under G. L. c. 106, § 3–302 (1) (b), and evidence that the plaintiff took the checks for value and without notice of dishonor, defence or claim required a conclusion that it was a holder in due course entitled to recover. [800–803]

CONTRACT. Writ in the District Court of Springfield dated October 22, 1968.

The action was heard by *Walsh*, J.

*Edwin H. Lyman, Jr.*, for the plaintiff.

*Edward L. Donnellan* for the defendant.

HENNESSEY, J. This is an action in contract in which the plaintiff seeks to recover on two checks drawn by the defendant on the Security National Bank, one in the amount of $9,650 payable to Villa's Auto Sales, Inc., and the other in the amount of $5,500 payable to Villa's Auto Sales. The District Court judge found for the defendant, and the report to the Appellate Division was dismissed. The case is before us on appeal by the plaintiff.

We summarize the relevant evidence. On October 9, 1968, an agent of the defendant attended a car auction in the State of Connecticut, and purchased three cars from Frederick Villa, for which he gave the two checks described above. The defendant subsequently resold the cars at a profit.

Frederick Villa was a customer of the plaintiff bank and had a corporate account there under the name of Villa Auto Sales, Inc. The manager of the Centerville Branch of the plaintiff bank in Providence, Rhode Island, was personally acquainted with Frederick Villa. Corporate authority stating that Frederick Villa was the president and treasurer of Villa Auto Sales, Inc., and that he was authorized to sign or indorse any check held by the corporation, was on file with the bank.[1]

---

[1] The material provisions of this authority are as follows:

"Voted: That the President-Vice President-Treasurer or Secretary of this Corporation, signing singly and their successors in office, be and they hereby are authorized to sign, endorse or deposit on behalf of this Corporation, any and all checks drawn or held by this Corporation, and the use is hereby authorized of a rubber stamp endorsement on any check the proceeds of which are credited to any account of this Corporation with the Bank.

"Voted: That the Bank is hereby directed to pay or apply without limit as to amount, without inquiry and without regard to the application of the proceeds thereof, any or all checks of this Corporation when signed by the personnel set forth in the preceding vote and in the manner specified therein, including any such check drawn to the indi-

362 Mass.797                                         799

Indust. Nat'l. Bank of Rhode Island *v.* Leo's Used Car Exchange, Inc.

Frederick Villa presented both checks to the plaintiff bank on October 10, 1968, and as was his practice, asked the teller to cash them and give him the cash since he was going to another auction and needed it. The checks were cashed and sent through the bank collection process. Meanwhile, the defendant stopped payment on the checks at the Security National Bank in Springfield, Massachusetts, following a telephone call from an officer of the Rhode Island Hospital Trust Company which claimed to hold security interests in the cars he purchased. Consequently, the checks were not honored when presented, and were returned to the plaintiff bank.

There was also evidence of a rule at the plaintiff bank that any corporate checks drawn on another bank must be approved by the manager before being cashed by a teller. In this case, the teller did not obtain the manager's approval before he cashed both checks. However, the manager would cash a check for a corporation if he knew the person cashing the check and knew his business.

The plaintiff requested, among others, a ruling that there was no evidence that in cashing both checks it did not act in good faith. While the District Court judge found that the plaintiff met all the other requirements to qualify as a holder in due course, he denied this request and therefore found that the plaintiff was not a holder in due course of either check. The report to the Appellate Division was dismissed. The plaintiff claims an appeal on the basis that there was no evidence to support the District Court judge's finding of lack of good faith.

1. We first determine which State's law applies. The Appellate Division held that since the checks were nego-

vidual order of any person whose signature appears thereon or of any officer or officers, agent or agents, of this Corporation, which may be deposited with, or delivered or transferred to, the Bank, or any other individual, firm or corporation for the personal credit or account of any such person, officer or agent; and the Bank shall not be liable for any disposition which any such person, officer or agent shall make of all or any part of the proceeds of any such check, notwithstanding that such disposition may be for the personal account or benefit or in payment of the individual obligation to the Bank of any such person, officer or agent."

800                                   362 Mass. 797

Indust. Nat'l. Bank of Rhode Island *v.* Leo's Used Car Exchange, Inc.

tiated in Rhode Island, its law should apply. See Restatement 2d: Conflict of Laws, § 216 (2). This was erroneous. Conflict of law problems arising under the Uniform Commercial Code are resolved by the Code. The rule is stated in G. L. c. 106, § 1–105.[2] Since no special provision for Article three — Commercial Paper — is contained in paragraph (2) of § 1–105, paragraph (1) applies to this case. G. L. c. 106, § 3–102 (4). Since there is no evidence that the parties agreed that a particular State's [3] law would apply, and since the transaction bears an appropriate relation to this State, Massachusetts law applies. G. L. c. 106, § 1–105 (1).

2. A holder in due course is a holder who takes the instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defence against or claim to it on the part of any person. G. L. c. 106, § 3–302 (1). To the extent that a holder is a holder in due course he takes the instrument free from all claims to it on the part of any person, and all defences of any party to the instrument with whom the holder has not dealt (personal defences) except specifically enumerated "real defences," G. L. c. 106, § 3–305.

The District Court judge found that the plaintiff was a holder who took the checks for value, and without notice that they had been dishonored or of any defence against or claim to the checks on the part of any person. However, the judge found that the checks were not taken in good faith, and therefore the plaintiff was not a holder in due course. Since the judge also found that a defence

---

[2] Section 1–105, inserted by St. 1957, c. 765, § 1, reads in part: "(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this chapter applies to transactions bearing an appropriate relation to this state."

[3] Since the parties could have selected any State to which the transaction bore a reasonable relation, Rhode Island, Connecticut or Massachusetts could have been eligible. G. L. c. 106, § 1–105 (1). Since all three States have adopted the Uniform Commercial Code, § 3–302, any choice may have had little consequence. See G. L. (R. I. 1956), § 6A–3–302, and Conn. Gen. Sts. Ann. § 42a–3–302 (1962).

362 Mass. 797                                           801

Indust. Nat'l. Bank of Rhode Island *v.* Leo's Used Car Exchange, Inc.

existed, he found for the defendant. See G. L. c. 106, § 3–306. The only substantive issue before us is whether or not the evidence supports the finding of the judge that the plaintiff did not take the checks in good faith. If it is found that the plaintiff did take the checks in good faith, it is clear that it is entitled to judgment in its favor in the absence of real defences. G. L. c. 106, § 3–305. No evidence of any real defence appears in the report.

The defendant argues that the plaintiff failed to exercise ordinary care in this transaction by violating the plaintiff's own rule of management when its teller cashed these checks without managerial approval. The defendant points to this as evidence of lack of good faith, which would support the judge's finding. Since there is no other evidence in the report which even arguably goes to the issue of good faith, we conclude that there was no evidence to support a finding of lack of good faith, and therefore both the District Court judge and the Appellate Division were in error.

"Good faith" as used in G. L. c. 106, § 3–302 (1) (b), is defined in G. L. c. 106, § 1–201 (19), as "honesty in fact in the conduct or transaction concerned." G. L. c. 106, § 3–102 (4). Nothing in the definition suggests that in addition to being honest, the holder must exercise due care to be in good faith. Where the Uniform Commercial Code has required more than "honesty in fact" it has explicitly so stated: as in the case of a payor in Article 3 — Commercial Paper — who pays on an instrument which has been altered or has an unauthorized signature (good faith and in accordance with the reasonable commercial standards of his business) § 3–406; as in the case of a merchant in Article 2 — Sales (honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade) § 2–103 (1) (b) ; as in the case of a bailee in Article 7 — Documents of Title (good faith including observance of reasonable commercial standards) § 7–404; and as in the case of an agent or bailee in Article 8 — Investment Securities (good faith,

802                                            362 Mass. 797

Indust. Nat'l. Bank of Rhode Island *v.* Leo's Used Car Exchange, Inc.

including observance of reasonable commercial standards if he is in the business of buying, selling or otherwise dealing with securities) § 8–318. Each word of a statute is presumed to be necessary. Hence, if good faith as defined by § 1–201 (19) and applicable to § 3–302 (1) (b) included the observance of due care or reasonable commercial standards, the additional words used in the articles cited above would be surplusage.

This conclusion, which is so clear from the Uniform Commercial Code itself, is supported by the legislative history of § 3–302 (1) (b). Reference to "reasonable commercial standards" in the definition of a holder in due course of a negotiable instrument in the 1951 Final Text Edition [4] was deleted by the Editorial Board for the Uniform Commercial Code. Section 3–302 (1) (b) of the 1956 Recommendations and text [5] reads as follows: "in good faith [including observance of the reasonable commercial standards of any business in which the holder may be engaged]." (P. 102) As the comment states: "The omission [of the bracketed material] is intended to make clear that the doctrine of an objective standard of good faith, exemplified by the case of *Gill* v. *Cubitt*, 3 B. & C. 466 (1824), is not intended to be incorporated in Article 3." (P. 103) Our conclusion is also supported by the pre-code case of *Macklin* v. *Macklin*, 315 Mass. 451, 455, where we said, "The rights of a holder of a negotiable instrument are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence."

This is not to say that negligence has no role in the determination of a holder's status as a holder in due course under § 3–302. [6] But negligence goes to the notice requirement of § 3–302 (1) (c), as defined by § 3–304, and § 1–201 (25). See also § 3–406. Since the District Court judge found that the plaintiff had no notice of dishonor,

---

[4] Am. Law Inst. Uniform Commercial Code, 1951 Final Text Edition.
[5] Am. Law Inst. Uniform Commercial Code, 1956 Recommendations.
[6] Indeed, conduct which is outrageous may provide evidence relevant to the issue of honesty, and therefore, good faith.

defence or claim, and the evidence supports this finding, the defendant's argument that the plaintiff failed to exercise due care is inapposite.

Since the evidence discloses no dishonesty, it does not support the District Court judge's finding that the plaintiff did not act in good faith. The order of the Appellate Division dismissing the report is reversed, the finding on each count for the defendant is vacated, and judgments are to be entered for the plaintiff.

*So ordered.*