540 P.2d 858

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Clarence SANCHEZ, Defendant-Appellant.**

**No. 1685.**

Court of Appeals of New Mexico.

June 25, 1975.

Certiorari Granted July 21, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Reginald J. Storment, Asst. Appellate Defender, Santa Fe, for appellant.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Mark Gerald Shoesmith, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted of possessing heroin in violation of § 54–11–23, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1973 Supp.). Defendant appeals. We reverse.

The denial of defendant's motion to suppress evidence seized from his apartment was reversible error for the following reasons:

(1) The mode of procedure in which the police officers gained entry into defendant's apartment was unlawful, in violation of defendant's Fourth Amendment guarantee against unreasonable searches and seizures.

(2) The manner of entry was unconstitutional, because: (a) The police officer who knocked did not give notice of his purpose. (b) The police officer did not wait to be denied admission before entering. (c) Exigent circumstances were not present which would excuse non-compliance.

### A. *Facts*

About 10:15 a. m., with a search warrant, four police officers approached the rear of defendant's apartment from the alley. One of the officers knocked loudly on the door of defendant's residence. The knock was clearly audible to everyone in the house. One officer said "Police Officers" and nothing else. No one answered at the door. The police officers entered immediately. In the absence of a "no-knock" warrant, it was the customary practice of the police to call out or announce their identity and the fact that they had a search warrant before entering the house. One officer stated there was no reason to deviate from this procedure in the instant case. However, he also testified that "to be perfectly honest with you, when the door didn't immediately open, I was expecting to hear the toilet flush, you see, and what I was thinking about was getting in that house."

Prior to entry, the officers heard a loud yell by a female, and other noise, and they saw some movement of people inside the house. They immediately forced open the door and entered defendant's apartment with guns drawn. The door was unlocked and opened easily. An informant had told the police officer to move very fast or the defendant would flush the heroin down the toilet. Normally, in the officer's experience, there was always an attempt to get rid of heroin. After entering, the police officers found a female subject and two children in the kitchen. In the bedroom, defendant was sitting on the end of the bed dressed in his underwear. The bathroom was off the kitchen area, not the bedroom area. No one was found in the bathroom. A search was made and heroin was found in the top dresser drawer in defendant's bedroom.

### B. *Law*

"Our view is that an officer, prior to forcible entry, must give notice of authority and purpose, and be denied admittance . . . . Noncompliance with this standard is justified if exigent circumstances exist. Examples, but not a catalogue, of exigent circumstances are . . . when prior to entry, officers in good faith believe that the person to be arrested is fleeing or attempting to destroy evidence. . . . The reasonableness of each search and seizure is to be decided upon its own facts and circumstances in light of these general standards." (Citations omitted). *State v. Baca,* 87 N.M. 12, 528 P.2d 656, 657–58 (Ct.App.1974).

■ The *Baca* rule allows the police to act fast and without warning under exigent circumstances when to do otherwise might allow a guilty person to escape conviction. But at the same time, the rule prevents unwarranted intrusion into private dwellings by overzealous police officers eager to execute a search. Rules similar to the one in *Baca* exist in other jurisdictions. However, conflicts have arisen in the interpretation of words and phrases in such rules and the application thereof to the facts of each case.

Conflicts arise because courts try to balance the citizen's Fourth Amendment rights against the legitimate requisites of the police when pursuing suspects, especially in narcotics cases. Some courts interpret the rules in favor of the police to facilitate the apprehending of suspects. Other courts are more sensitive to the violation of citizens' constitutional guarantee against unreasonable searches and seizures. See Note, Unannounced Entry to Search: The Law and the "No-Knock" Bill (S. 3246), 1970 Wash.U.L.Q. 205; Note, No-Knock and the Constitution: The District of Columbia Court Reform and Criminal Procedure Act of 1970, 55 Minn.L.R. 871 (1971); Annot., What Constitutes Violation of 18 U.S.C.S. § 3109 Requiring Federal Officer to Give Notice of his Authority and Purpose Prior to Breaking Open Door or Window or Other Part of House to Execute Search Warrant, 21 A.L.R.Fed. 820 (1974).

Today, we hold that the entry by police in the instant case was unlawful. We explain the critical phrases in the *Baca* rule to guide the police and the lower courts in determining the boundary between lawful and unlawful police conduct in the execution of a search warrant. Those critical phrases are: (a) "forcible entry"; (b) "notice of authority and purpose"; (c) "denial of admittance"; and (d) "exigent circumstances".

(a) *Forcible Entry*

■ "Forcible entry" is not restricted to breaking down a door or window. Entry through a closed but unlocked door, absent consent, is a forcible entry. Entry through an open door, absent consent, is a forcible entry. In essence, forcible entry refers to an unannounced intrusion. See, *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Sears v. State*, 528 P.2d 732 (Okla.Cr.1974); *State v. Miller*, 7 Wash.App. 414, 499 P.2d 241 (1972); *People v. Godinas*, 176 Colo. 1391, 490 P.2d 945 (1971); *People v. Bradley*, 81 Cal. Rptr. 457, 460 P.2d 129 (1969).

(b) *Notice of Authority and Purpose* •

■ "Notice of authority and purpose" means that the enforcement officer must, before entry, knock at the door or announce his presence to the person in the house, and wait for a person to come to the door. He must then state that he is a police officer; that he has a warrant to search the premises and then request permission to enter and serve the warrant. *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *Sears v. State*, supra; *Sabbath v. United States*, supra; *State v. Miller*, supra; *Tatman v. Delaware*, 320 A.2d 750 (Del.1974).

■ In the instant case, the police officer knocked on the door and announced his authority in an audible manner, however, he did not wait for anyone to come to the door. Nor did he state his purpose for being present, or request permission to enter and serve the warrant. He did not, therefore, properly give notice of his authority and purpose.

(c) *Denial of Admittance*

The meaning of "denial of admission" or "refused admittance" has been stated in Annot., 21 A.L.R.Fed. 820, supra, at 834–35, as follows:

. . . The phrase "refused admittance" has been generally interpreted not to mean an affirmative refusal, and the courts have held that an officer may justifiably conclude that he has been refused entry where after announcement he either becomes aware of activity by the occupants which is inconsistent with

action deemed reasonably necessary to open the door, or where a reasonable interval of time has elapsed without any response by the occupants, although some courts have determined that an entry made too soon after announcement precludes any opportunity by the occupant to refuse the officer admittance.

" 'There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend upon the circumstances of each case.' " *United States v. Phelps,* 490 F.2d 644, 647 (9th Cir. 1974), quoting *McClure v. United States,* 332 F.2d 19, 22 (9th Cir. 1964), cert. denied, 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965).

Simultaneous identification and entry is unreasonable and demands the suppression of evidence. *United States v. Doering,* 384 F.Supp. 1307 (W.D.Mich.1974); *State v. Eminowicz,* 21 Ariz.App. 417, 520 P.2d 330 (1974). Where a police officer knocked loudly on the door, stated his identity as a police officer and that he had a search warrant, demanded entry, and repeated this two or more times, waiting 30–60 seconds before breaking in, the officer could reasonably infer that he had been denied admittance. *Davis v. State,* 525 P.2d 541 (Alaska, 1974); *People v. Lujan,* 484 P.2d 1238 (Colo.1971).

In the instant case, the police officer, after announcing his authority, immediately entered. There was no activity or time interval elapse from which the police officer could conclude that admission had been denied. This made the entry unlawful. *United States v. Case,* 435 F.2d 766 (7th Cir. 1970); *United States v. Barrow,* 212 F.Supp. 837 (E.D.Pa.1962).

### (d) *Exigent Circumstances*

The exception to the requirements set forth in (a), (b) and (c), supra, is called "exigent circumstances". If, *prior to entry,* a police officer in good faith believes that the person whose home is to be searched and/or the person inside to be arrested is fleeing or is attempting to destroy evidence, the police officer may enter without fulfilling the above requirements. *State v. Baca,* supra. By a good faith belief, we mean a *reasonable* belief, one resting on a reasonable assessment of the facts available to the police officer prior to entry.

The burden of showing the existence of exigent circumstances rests on the State. *People v. Lujan,* supra; *McDaniel v. State,* 54 Ala.App. 314, 307 So.2d 710 (Ala.Cr.App.1974).

*Ambiguous* conduct cannot provide the basis for a reasonable belief that the person or persons inside are attempting to flee or to destroy evidence.

Our decisions . . . have held that ambiguous conduct cannot form the basis for a belief of the officers that an escape or the destruction of evidence is being attempted. *Wong Sun v. United States,* 371 U.S. 471, 483, 484, 83 S.Ct. 407, 415, 416, 9 L.Ed.2d 441, 452, 453; *Miller v. United States,* supra, 357 U.S. 301, at 311, 78 S.Ct. 1190, 1196, 1197, 2 L.Ed.2d 1332. *Ker v. California,* 374 U.S. 23, 57, 83 S.Ct. 1623, 1641, 10 L.Ed.2d 726, 752 (1963) (Opinion of Brennan, J., concurred in by Warren, C. J., and Douglas and Goldberg, JJ.).

In the instant case, prior to entry, the officers heard a loud yell by a female, and noise, and they saw some movement of people in the house. This is ambiguous activity. No officer testified that prior to entry some activity occurred which caused him to believe that defendant was fleeing, or was attempting to destroy evidence. To the contrary, one police officer testified that no reason existed to deviate from the general practice announcing authority and purpose prior to entry, even though he expected to hear the toilet flush.

Indeed, no evidence was produced by the State to suggest that defendant was fleeing or attempting to destroy evidence even after the police officers' entry. The officers found defendant sitting on his bed dressed in his underwear.

Exigent circumstances do not exist where the only fact known to the police is the readily disposable nature of the contraband that is the object of the search. *Heaton v. Commonwealth*, 215 Va. 137, 207 S.E.2d 829 (1974).

Neither do we find any other facts known to the police officers that excused compliance with the rule in *Baca*. "There is no evidence of *unusual* activity, noise, or conduct, indicating any circumstances which would bring the facts of this case within the exception. [Emphasis added]." *State v. Lowrie*, 12 Wash.App. 155, 528 P. 2d 1010, 1012 (1974).

There exists a flood of cases in the United States involving police intrusion into the sanctity of the home in search of narcotics and the suppression and nonsuppression thereof. Distinctions can be made on the facts, although we recognize that some courts adopt a more permissive attitude towards the police than we do. See *People v. McIlwain*, 28 A.D.2d 711, 281 N. Y.S.2d 218 (A.D.2d Dep.1967); *Whisnant v. State*, 303 So.2d 397 (Fla.App.3d Dist. 1974); *State v. Thorson*, 302 So.2d 578 (La.1974); *Commonwealth v. McKeever*, 229 Pa.Super. 35, 323 A.2d 44 (1974); *Carratt v. Commonwealth*, 215 Va. 55, 205 S.E.2d 653 (1974); *People v. Arnold*, 527 P.2d 806 (Colo.1974).

We believe that rigid restrictions are essential to enforcement of the *Baca* rule. We agree with Justice Brennan:

The recognition of exceptions to great principles always creates, of course, the hazard that the exceptions will devour the rule. If mere police experience that some offenders have attempted to destroy contraband justifies unannounced entry in *any* case, and cures the total absence of evidence not only of awareness of the officers' presence but even of such an attempt in the *particular* case, I perceive no logical basis for distinguishing unannounced police entries into homes to make arrests for *any* crime involving evidence of a kind which police experience indicates might be quickly destroyed or jettisoned. Moreover, if such experience, without more, completely excuses the failure of arresting officers before entry, at any hour of the day or night, either to announce their purpose at the threshold or to ascertain that the occupant already knows of their presence, then there is likewise no logical ground for distinguishing between the stealthy manner in which the entry in this case was effected, and the more violent manner usually associated with totalitarian police of breaking down the door or smashing the lock. [Emphasis by Justice Brennan] *Ker,* supra, 374 U.S. at 61–62, 83 S.Ct. at 1644, 10 L.Ed.2d at 754.

The tainted evidence secured by entry into defendant's apartment in the instant case should have been suppressed. The entry was unlawful, in violation of defendant's Fourth Amendment rights.

Reversed. Defendant is granted a new trial.

It is so ordered.

LOPEZ, J., concurs.

HENDLEY, J., dissenting.

HENDLEY, Judge (dissenting).

I dissent.

The police officers in the instant case had reasonable grounds for their good faith belief that the defendant would destroy the evidence if they did not forcibly enter defendant's house. The majority rely on 20/20 hindsight and three cases to hold otherwise. *Ker v. California*, 374 U. S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (Opinion of Brennan, J.); *Heaton v. Commonwealth*, 215 Va. 137, 207 S.E.2d 829 (1974); *State v. Lowrie*, 12 Wash.App. 155, 528 P.2d 1010 (1974).

The fact that defendant was found in bed and that no one in the house was attempting to destroy evidence is irrelevant to the determination of whether exigent circumstances existed to justify the forcible entry in the instant case. The relevant question is, as stated by the majority, what was in the officers' minds prior to the entry. *State v. Baca,* 87 N.M. 12, 528 P.2d 656 (Ct.App.1974).

As the majority recognizes, the officers minds contained the following information: (1) probable cause to believe that defendant's house had heroin in it, (2) an informant's tip that the officers had better act quickly because defendant had a gun and the heroin would be flushed down the toilet, (3) a loud yell by a female in the house, (4) noise in the house, (5) movement of people in the house and (6) the announcement by the officers that they were the police, which announcement came prior to the yell, noise and movement.

It is true that Mr. Justice Brennan's opinion in *Ker,* states that ambiguous conduct cannot form the basis for a reasonable belief that evidence is being destroyed. However, that opinion recognizes that the same conduct, coupled with a showing of awareness by the occupants of the officers' presence, would be unambiguous conduct justifying a forcible entry. In *Heaton,* the only fact known was the readily disposable nature of the contraband. In *Lowrie,* the officers were in plain clothes and did not announce that they were officers, nor was there any evidence of activity or noise in the house.

In the case at bar, we have all the factors missing from the *Heaton* and *Lowrie* cases. Also, missing is the factor that makes ambiguous conduct unambiguous according to Mr. Justice Brennan in *Ker.*

Accordingly, I would affirm the trial court's decision admitting the evidence as being in compliance with *State v. Baca,* supra.