585 P.2d 325

**Ronald McKAY and wife, Georgia McKay, Plaintiffs-Appellants,**

v.

**The FARMERS AND STOCKMENS BANK OF CLAYTON, New Mexico, et al., Defendants-Appellees.**

**No. 3146.**

Court of Appeals of New Mexico.

July 11, 1978.

Rehearing Denied July 20, 1978.

Bill Cornett and James D. Durham, Jr., Durham & Cornett, Amarillo, Tex., for plaintiffs-appellants.

Alvin F. Jones, Roswell, for defendants-appellees.

### OPINION

LOPEZ, Judge.

Appellants (the McKays) brought suit to recover monetary damages for tortious and wrongful acceleration of secured promissory notes held by the appellees, Farmers and Stockmens Bank of Clayton, et al. (the Bank). The Bank moved for summary judgment and their motion was granted. The McKays appeal and we reverse.

Appellants present one issue for reversal: that the trial court erred in granting appellees' motion for summary judgment because a material question of fact exists as to whether or not the Bank's foreclosure of appellants' secured promissory notes was in good faith.

*Facts*

The McKays executed several promissory notes to the Bank. Their notes came due on January 20, 1976; thereafter appellants were in default. On January 20, 1976, the Bank estimated that its security exceeded

appellants' debt by approximately $20,-000.00. On February 13, 1976, the Bank reviewed the notes, extended the maturity date to April 1, 1976, and waived any prior default with regard to the past due status of the notes.

On March 3, 1976, however, the Bank deemed itself to be insecure; accelerated the maturity of the McKays' notes; declared them in default; took possession of the security (chattels mortgaged); and sold part of the security. The McKays' complaint seeks about $350,000.00 in damages and arose as a result of the acceleration of the secured promissory notes and the seizure and partial sale of the security.

*Summary Judgment was Erroneously Granted*

The McKays argue that the Bank was not, in good faith, insecure and that, therefore, the court erred in granting the motion for summary judgment. The Bank contends that it did in good faith deem itself insecure in the acceleration of the notes and that summary judgment was the proper method to dispose of the issues below.

The notes in question contain the following pertinent clauses:

At the option of the holder, the payment of all principal and interest due in accordance with the terms of this note will be accelerated and such principal and interest shall be immediately due and payable without notice or demand, upon the occurrence of any of the following events of default:

(a) when the holder hereof in good faith deems itself insecure * * *

The New Mexico Uniform Commercial Code governs the acceleration of notes. Sections 50A–1–208 and 50A–1–201, N.M. S.A. 1953 (Repl. Vol. 8, pt. 1, 1962) are applicable:

*Option to accelerate at will.*—A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean

that *he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired.* The burden of establishing lack of good faith is on the party against whom the power has been exercised. [Emphasis added]

Section 50A–1–201(19)

(19) "Good faith" means honesty in fact in the conduct or transaction concerned.

■ As stated above, § 50A–1–201, supra, requires the showing of a lack of good faith by the party against whom the power has been exercised. The New Mexico courts have not defined "good faith" beyond the statutory definition. The only discussion in this context with regard to "good faith" is this Court's ruling in *Merchant v. Worley*, 79 N.M. 771, 449 P.2d 787 (Ct.App.1969). That ruling served to reiterate the last sentence of § 50A–1–208, *supra*, that the burden of establishing the lack of good faith is on the debtor. The burden of proof set out in § 50A–1–208, *supra*, and discussed by this Court in *Merchant v. Worley, supra*, applied to a directed verdict and not to a motion on summary judgment. The burden of proof applied to the quantum of evidence and sufficiency of proof as to the lack of good faith *after* all the evidence was before the court. That burden of proof does not apply to a motion for summary judgment where the sole question before the court is whether a genuine issue of material fact exists. On the contrary, the burden of proof is on the movant to show the absence of a genuine issue of fact. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

Although § 50A–1–208, supra, requires a showing of a lack of good faith by the party against whom the power to accelerate has been exercised, this does not mean that the non-movant has this same burden of proof on a motion for summary judgment.

■ As stated many times in this jurisdiction, summary judgment is a drastic remedy and is to be used with great caution. *Pharmaseal Laboratories, Inc. v.*

*Goffe*, 90 N.M. 753, 568 P.2d 589 (1977); *Zengerle v. Commonwealth Insurance of N.Y.*, 60 N.M. 379, 291 P.2d 1099 (1955).

The New Mexico Supreme Court, in *Goodman v. Brock, supra*, adopted the rule to be applied in determining whether a motion for summary judgment should be granted.

"[T]he party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists. If there are such reasonable doubts, summary judgment should be denied. A substantial dispute as to a material fact forecloses summary judgment."

The question before us is whether the evidence in the entire record shows that there exists material issues of fact as to the Bank's good faith or lack of good faith in the acceleration of the McKays' notes.

The Bank contends that the issue of good faith, or lack thereof, can be decided as a matter of law and is therefore amenable to a summary judgment. It argues that the question of fact involved in the determination of good faith on the part of the accelerating party is a no more unique or different question of fact than any other fact question and as such does not merit any different treatment on a motion for summary judgment. In support of its position, the Bank refers to *Van Horn v. Van De Wol, Inc.*, 6 Wash.App. 959, 497 P.2d 252, 61 A.L.R.3d 241 (1972), and *Fort Knox National Bank v. Gustafson*, 385 S.W.2d 196 (Ky. 1964). However, the court in *Van Horn v. Van De Wol, Inc., supra*, made a clear distinction between secured and unsecured creditors finding that a secured creditor must show more compelling facts because he is in a less precarious position than is an unsecured creditor. In contrast there is no question that the Bank is a secured creditor.

The court in *Fort Knox, supra*, construed the latter portion of § 1–208 of the Uniform Commercial Code as requiring the submission to the jury of the issue of good faith unless the evidence relating to it is no more than a scintilla, or lacks probative value having fitness to induce conviction in the minds of reasonable men. Although the court in *Fort Knox* held the evidence was so conclusive as to warrant a directed verdict on the issue of good faith, a directed verdict is procedurally different from a motion for summary judgment, requiring of the trial court a different approach to the evidence.

Furthermore, "good faith" is not generally a question of law, but is usually a question of fact.

Ordinarily the question of whether the holder of the option to accelerate has or has not acted in good faith presents a question of fact for the trier of fact. Anderson, Uniform Commercial Code, § 1–208:15 (1970).

A summary of the conflicting evidence with all reasonable doubts resolved in favor of the non-moving party is as follows: When the Bank seized the security of appellants, the McKays were attempting to secure financing from other sources. The Bank refused to cooperate with the McKays in attempting to obtain the financing from other sources and mislead them by telling them they were ineligible for FHA government financing. The Bank's secured position with respect to appellants' property would be the same either before or after bankruptcy, thus it is questionable as to whether the Bank could have believed and did believe that a default had occurred by a mere suggestion of bankruptcy. The value of the Bank's security in the McKays' property was greater than their indebtedness, and the Bank had agreed to continue its support of the McKays.

We hold the evidence was sufficient to create a reasonable doubt as to the existence of a genuine issue, thus precluding summary judgment.

We conclude that the trial court erred in granting the summary judgment. Summary judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, J., dissenting.

SUTIN, Judge (specially concurring).

I concur.

This is another of many summary judgments in which oral arguments and the court's comments, if any, were not recorded. Findings of fact or reasons for rendering judgment are absent. Good memorandum briefs were filed. I compliment the attorney who can convince a trial judge of the righteousness of his cause though he is wrong. I also compliment the attorney who can appeal and convince an appellate court of the righteousness of his cause when he is right.

In summary judgment proceedings, the court should request opposing attorneys to submit findings of fact and conclusions of law, and state the reasons why summary judgment should be granted or denied. Due to the silence of the court, we do not know the facts upon which the court relied, the basis upon which summary judgment was rendered and the reasons therefore. Generally, a formal summary judgment is not a fair "Declaration of Rights." It has no appellate value and deserves no consideration. The trial court has shifted to this Court the burden of assessing the facts to determine whether a genuine issue of material fact exists.

This criticism of summary judgments has continued in the belief that the Supreme Court will return to its former position and welcome findings of fact or reasons given by a district judge for granting or denying summary judgment.

The only issue on this appeal is whether the bank, as a matter of law, had the right to accelerate payment of plaintiff's promissory note because it deemed itself insecure under a good faith belief that prospect of payment was impaired.

This issue is a matter of first impression. We must marshall case authority, the rules of law involved and their application to the facts of this case.

Section 50A–1–208, set forth in Judge Lopez' opinion, "has the dual elements of whether (1) a reasonable man would have accelerated the debt under the circumstances, and (2) whether the creditor acted in good faith." *Blaine v. G. M. A. C.,* 82 Misc.2d 653, 370 N.Y.S.2d 323 (1975); *Sheppard Federal Credit Union v. Palmer,* 408 F.2d 1369 (5th Cir. 1969); *Universal C. I. T. Credit Corporation v. Shepler,* Ind.App., 329 N.E.2d 620 (1975); II Gilmore, *Security Interests in Personal Property,* § 43.4, p. 1197 (1965).

*Gilmore* says:

* * * The creditor has the right to accelerate if, under all the circumstances, a reasonable man, motivated by good faith, would have done so. * * * The Code adopts such a rule in § 1–208:

A "reasonable man" is one with a "reasonable mind," and "A *reasonable* mind is a sensible one, fairly judicious in its action, and at least somewhat cautious in reaching its conclusions." [Emphasis by Court.] *Anderson v. Welsh,* 86 N.M. 767, 769, 527 P.2d 1079, 1081 (Ct.App.1974).

Section 1–208 "seems to recognize that acceleration is a harsh remedy which should be allowed only if there is some reasonable justification for doing so, such as a good faith belief that the prospect of payment is impaired." This is an equitable doctrine firmly established in the Uniform Commercial Code because acceleration is a severe covenant unfavored in the law. One who seeks to impose these severe conditions must not permit the debtor to assume that the covenant will not be strictly enforced and then "crack down" by rigidly insisting on enforcement without giving some notice and opportunity to comply. *Williamson v. Wanless,* 545 P.2d 1145, 1149 (Utah, 1976); *State Bank of Lehi v. Woolsey,* 565 P.2d 413 (Utah, 1977). Even without regard to the provisions of the Uniform Commercial Code, a court of equity will protect a debtor against an inequitable acceleration of the maturity of the debt. *Seay v. Davis,* 246 Ark. 201, 438 S.W.2d 479 (1969).

Judge Lopez' opinion also sets forth the statutory definition of "Good Faith." The test of good faith under that section is a wholly subjective one of honesty. It has been stated in various ways. The cases are collected in *Farmers Co-op El., Inc., Dun-*

*combe v. State Bank*, 236 N.W.2d 674 (Iowa, 1975).

"Good faith" as "honesty in fact" is essentially a subjective test which focuses on the state of mind of the person in question. *Bowling Green, Inc. v. State Street Bank and Trust Co.*, 425 F.2d 81 (1st Cir. 1970). "It must be remembered that here we are dealing with the 'good faith' *belief* of the bank—that is, its state of mind." [Emphasis by Court.] *Fort Knox National Bank v. Gustafson*, 385 S.W.2d 196, 200 (1964); *General Investment Corp. v. Angelini*, 58 N.J. 396, 278 A.2d 193 (1971). "The test as to the good faith of the creditor in accelerating under an insecurity clause is a matter of the creditor's actual mental state and this is not negatived by showing there was no basis for the creditor's belief . . .." *Blaine,* supra. [370 N.Y.S.2d at 327.] "The test is not diligence or negligence; and it is immaterial that appellee [bank] may have had notice of such facts as would put a reasonably prudent person on inquiry which would lead to discovery, unless appellee [bank] had actual knowledge of facts and circumstances that would amount to bad faith." *Riley v. First State Bank, Spearman*, 469 S.W.2d 812, 816 (Tex.Civ.App. 1971); *Richardson Company v. First Nat. Bank in Dallas*, 504 S.W.2d 812 (Tex.Civ. App.1974); *First State Bank & Trust Co. of Edinburg v. George*, 519 S.W.2d 198 (Tex. Civ.App.1974). The good faith "test requires *honesty of intent* rather than absence of circumstances which would put an ordinarily prudent holder on inquiry in order to constitute good faith. . . . In short, it is an issue of *honesty of intent* rather than of diligence or negligence. Some term it the 'white heart' test." [Emphasis added.] *Eldon's Sup. Fresh Stores, Inc. v. Merrill, Lynch, Etc.*, 296 Minn. 130, 207 N.W.2d 282, 287 (1973).

Nothing in the definition of "good faith" suggests that in addition to being honest, the creditor must exercise due care or reasonable commercial standards or lack of negligence to be in good faith. *Industrial Nat. Bank of R. I. v. Leo's Used Car Ex., Inc.*, 362 Mass. 797, 291 N.E.2d 603 (1973). The standard of this test is what facts the bank actually knew, or believed it knew, not what it could or should have known. *Van Horn v. Van De Wol, Inc.*, 6 Wash.App. 959, 497 P.2d 252 (1972), 61 A.L.R.3d 241 (1975). By a "good faith" belief, I mean one resting on a reasonable assessment of the facts available to the bank. See *State v. Sanchez*, 88 N.M. 378, 540 P.2d 858 (1975), rev'd, 88 N.M. 402, 540 P.2d 1291 (1975).

To sum up in precise language, "The test is what the particular person did or thought in the given situation and whether or not he was honest in what he did." *Balon v. Cadillac Automobile Company of Boston*, 113 N.H. 108, 112, 303 A.2d 194, 196 (1973). No one but that particular person can possibly know what his good faith is. *Custom Panel Systems, Inc. v. Bank of Hampton*, 143 Ga. App. 681, 239 S.E.2d 558 (1977).

By using the "good faith belief" doctrine, the main problem to solve is how a trier of fact can obtain knowledge of the minds of others, to whose states we have no direct, introspective access. This knowledge can only be obtained from perceptible manifestations in speech, conduct and behavior of a person, or reasonable inferences to be drawn therefrom. This requires a trier of the fact to glean from the testimony and evidence such manifestations in speech, conduct, and behavior of a person that it can know or infer what a person thought in a given situation and whether the person was honest in what the person did. It is foreseeable that an expert opinion may be necessary to assist the trier of the fact.

From memorandum briefs filed in the district court and briefs filed on this appeal, these rules of law and their meaning were not submitted in depth to the trial court or to this Court.

Under these rules, for the bank to make a prima facie case to support a summary judgment, the bank must prove that from facts which it actually knew or believed it knew, it deemed itself insecure; that under these circumstances, a reasonable person would believe that prospect of payment was impaired, would accelerate the maturity of plaintiff's promissory note and seize and

sell a part of its security; that in taking this action, the bank made a reasonable assessment of the facts, thought that it had the right to take this action, and in acting as it did, its intention was honest.

The record shows: the loan officer of the bank testified that plaintiff's note was past due on January 20, 1976; that the bank extended the payment to April 1, 1976 and waived any prior default. The reason the note was extended was to have an orderly liquidation of the security. Plaintiff was told that the bank would be unable to finance him in the future. Prior to February 13, 1976 the bank reviewed the collateral. It was questionable whether the bank was secure when its security was matched against the indebtedness, and as of February 13, 1976, the bank felt that it was secure if the security remained at value. The security exceeded the indebtedness by $20,000, and by February 13, 1976, it deteriorated in value by $10,000.

On March 3 or 4, 1976, the bank declared plaintiff to be in default because plaintiff threatened bankruptcy, that the collateral was in jeopardy, and on that basis, it accelerated the notes. The president of the bank testified that plaintiff gave the bank an ultimatum that the bank was either going to re-finance him or charge off $50,000, or he would take bankruptcy. There was no doubt in his mind that plaintiff intended to go into bankruptcy because that's what he said they were going to do. Nevertheless, the bank did not fear that it would be treated by any bankruptcy court in any manner other than a secured creditor. Upon the advice of counsel, the bank felt it was to its advantage to marshall all plaintiff's assets covered in the security agreement despite plaintiff's objections. Plaintiff did not go into bankruptcy.

Even though the bank had extended payment of plaintiff's note to April 1, 1976, and waived any default, the bank, on March 9, 1976, filed a petition against plaintiff and requested an order to show cause, in which petition the loan officer swore that "all such notes evidencing such indebtedness are in default."

Based upon these facts, plaintiff was not in default. A genuine issue of material fact exists (1) whether the bank deemed itself insecure and (2) whether under these circumstances a reasonable person would accelerate the maturity of plaintiff's promissory note and take the action it did.

Plaintiff's affidavit and testimony controverted the bank's, and, in addition, according to plaintiff's affidavit, plaintiff was in the process of securing financing from other sources at the time the bank seized his property. The bank refused to cooperate and mislead plaintiff by stating that plaintiff was ineligible for certain F.H.A. government financing when in fact plaintiff was eligible; that the bank knew plaintiff was not in default. Nevertheless, in a concerted effort to eliminate plaintiff from the farming business, the bank, in bad faith, caused plaintiff's property to be seized and disposed of. Based upon these facts, a genuine issue of material fact exists on the good faith belief of the bank in taking the action it did.

Summary judgment should be reversed.

HERNANDEZ, Judge (dissenting).

The defendant bank was entitled to summary judgment as a matter of law. There is nothing in the record to show a lack of good faith by the bank. There are, therefore, simply no inferences which the plaintiffs are entitled to have drawn from the evidence before the court. The defendant has met its burden of showing that there is no reasonable doubt as to whether or not a genuine issue of material fact exists. *Goodman v. Brock*, 83 N.M. 789, 489 P.2d 676 (1972).