789 P.2d 620

The CITIZENS BANK OF CLOVIS, a New Mexico corporation, Plaintiff–Appellee,

v.

James L. RUNYAN, Jr., George McLiney and John Wilson, individually and doing business as a partnership, Defendants–Appellants,

and

Don Carlos Ranch, a partnership, and W. Dwight Clower, Defendants–Appellees,

Paul C. Dean, Michael D. Hobbs, and all Unknown Claimants of Interest in the Premises Adverse to Plaintiff, Defendants.

No. 18780.

Supreme Court of New Mexico.

April 12, 1990.

Rehearing Denied April 25, 1990.

Keleher & McLeod, Kurt Wihl, Albuquerque, for defendants-appellants.

Lynell G. Skarda, Clovis, for plaintiff-appellee.

Atwood, Malone, Mann & Turner, Victoria S. Arends, Roswell, for defendant-appellee Don Carlos Ranch.

## OPINION

SOSA, Chief Justice.

James L. Runyan, Jr. (Runyan) appeals a partial summary judgment, made final by the trial court, in favor of The Citizens Bank of Clovis (CBC). At issue is a sum of money, more than $400,000, placed in an interest-bearing account with CBC pending resolution of a controversy over who is entitled to the account. The facts behind the creation of the account are as follows.

### I.

### FACTS

Runyan bought cattle from one Paul Dean, an experienced cattle merchant doing business on both sides of the Rio Grande. Runyan, who was domiciled in Missouri, agreed to pay Dean a certain purchase price for 1,867 head of Mexican cattle. Runyan further agreed with Dean to permit Dean to pasture the cattle in New Mexico for a given period and to pay Dean a surcharge for any weight the cattle gained while being pastured.

Dean then sold a disputed number of cattle to one Dwight Clower, a farmer in Roosevelt County. It is likely that some 1,196 head of cattle were exchanged. Runyan alleges that some of the cattle sold to Clower were steers which Runyan had purchased from Dean. Clower admittedly did not receive bills of sale from Dean for the cattle he bought from Dean. However, Clower did receive shipping invoices. At least two of these invoices indicated that the cattle he was receiving from Dean had been shipped under Runyan's name. Fur-

ther, a buy-back agreement, discussed below, between Dean and Clower, contained the following language: "This contract shall include all merchantable cattle bearing the slash cross bell brand, purchased from Mike Hobbs and Dean Land and Cattle."

The brand in question—"slash-cross-bell" —was owned by a company represented by Runyan. There is no dispute that the brand was used to identify cattle belonging to Runyan. Mike Hobbs was Dean's agent, and acted to sell certain of the cattle to Clower and on occasion received payment from CBC on Dean's behalf. In his deposition testimony, Clower testified that he "rarely ever" looked at the documents pertaining to the cattle delivered to him by Hobbs. When asked if he recognized Jim Runyan's name on certain of the documents, he answered, "Now I would say that's Jim Runyan, yes, which meant nothing to me at the time."

When asked about his previous dealings in cattle sales, Clower answered that at least twice he purchased cattle from "Mid–Ark Cattle Company out of Meridian, Mississippi." Any other dealings he had in cattle sales he couldn't remember "off the top of my head," but he "could look and see" if he still had records of such dealings. Clower had been ordered by subpoena to bring these records to his deposition, but did not comply, and the court issued its partial summary judgment without Clower's having produced records of any past dealings as a cattle merchant.

Clower proceeded to pasture the cattle he bought from Dean through Hobbs on his farm lands in Curry and Roosevelt Counties. Hobbs, acting on Dean's behalf, negotiated with Clower a buy-back agreement in which Clower would sell to Dean some of the cattle Clower had just bought, including cattle branded with Runyan's slash-cross-bell brand. During this period CBC had been advancing Clower money to purchase the cattle from Dean. A CBC vice-president at one point visited Clower's farm to inspect the cattle. Following questions by counsel at his deposition hearing,

Clower's testimony on this visit was as follows:

Did anybody from the bank ever come to look at the cattle?

Yes

\* \* \* \* \* \*

And at that point, some of [the cattle] had been branded?

Yeah.

With the Slash Cross Bell?

Right, Slash Cross Bell [and some with Clower's own brand].

\* \* \* \* \* \*

It's your understanding the reason [the bank official] came out in March was to look at the cattle they were loaning money on?

Uh-huh [yes].

Clower testified that his foreman branded "800, approximately" of the cattle with Runyan's brand before returning them to Dean, and that he then informed CBC's vice-president of the buy-back agreement. The buy-back agreement contained the following language: "1,100 total cattle with a [slash-cross-bell brand drawn in]. Buy back to include 900 head balance sold to Dwight Clower." CBC duly filed financing statements pertaining to its security interest in the subject cattle, describing the cattle by reference to Clower's brand but not to the slash-cross-bell brand. Clower then sold some 115 head of cattle to Dean without CBC's knowledge and another 880 head to Clifton Cattle Company, also without CBC's knowledge.

Some six months later, Runyan, after investigating the whereabouts of his cattle, contacted Clower and claimed ownership of some of the cattle on Clower's property. Clower professed ignorance and contacted CBC. CBC's counsel then contacted Runyan's counsel to determine if an equitable settlement of the dispute over ownership of the cattle could be reached. As the facts of Dean's swindle came to light, with Dean nowhere to be found, counsel for CBC and Runyan, respectively, agreed that Clower could sell another 736 head of cattle to Clifton Cattle Company and that the proceeds of this sale would be placed in the

account which is the subject of this lawsuit, pending resolution of the parties' dispute.

CBC filed suit, naming Runyan and Clower, *inter alia*, as defendants, seeking clear title to the fund represented by the account. Runyan counterclaimed, seeking ownership of the fund. In granting partial summary judgment in CBC's favor, the trial court ruled:

[NMSA 1978] Sections 55–2–403(2) and (3) state that a person who entrusts possession of goods to a merchant who deals in goods of that kind, gives that merchant the power to transfer all rights of the entrustee to a buyer in the ordinary course of business. The facts quite clearly show that Dean is the merchant who is entrusted with the cattle by Runyan, the entruster, and that the buyer in the ordinary course of business was Mr. Clower.

Alternatively, [CBC] is entitled to summary judgment, because it appears to the Court that Mr. Dean had a voidable title to the cattle and that he had power to transfer good title to the good faith purchaser for value, even though it appears to the Court that the delivery of the cattle was procured through fraud, punishable as larcenous under the criminal law.

The court awarded the money in the account to CBC and dismissed Runyan's counterclaim. It further ruled that Runyan had no interest in another 114 head of cattle sold by Clower to defendant Don Carlos Ranch, even though Runyan and Don Carlos Ranch had filed no crossclaims against each other pertaining to the cattle sold to Don Carlos Ranch.

## II.

## ISSUES RAISED, HOLDING ON APPEAL

CBC maintains that the court's judgment should be affirmed because Runyan, being a knowledgeable, experienced dealer in cattle, chose to entrust his cattle to Dean, who defrauded Runyan. The issue, according to CBC, does not involve balancing the equities between innocent, defrauded par-

ties. Rather, the issue involves interpretation of the Uniform Commercial Code. The Code clearly contemplates such a set of facts as the one before the court, and the Code has chosen to protect good faith purchasers, and buyers in the ordinary course of business, such as Clower and CBC, thereby assuring the widest possible range of commercial intercourse. Runyan's misfortune, CBC contends, should have no bearing on the court's disposition of the contested account.

Runyan argues that in issuing its ruling the trial court of necessity found certain facts in CBC's favor which Runyan insists are still at issue. For example, Runyan contends that Clower was not a buyer in the ordinary course of business, and that Dean did not have power to transfer Runyan's ownership rights in the cattle to Clower. Runyan asserts that Clower was a cattle merchant and, as such, to be in good faith he was required to observe reasonable commercial standards of fair dealing in the trade. Neither Clower nor CBC, Runyan argues, was a good faith purchaser for value as defined by the Code. Finally, the court's ruling on the cattle sold to Don Carlos Ranch was essentially an "advisory opinion" and should be vacated on remand.

Upon considering the parties' arguments and the record below, we reverse the partial summary judgment and remand the cause to the trial court for further proceedings not inconsistent with our holding herein.

### III.

### DISCUSSION OF LEGAL ISSUES

We agree with CBC that resolution of the issues raised by the parties depends on application of the Uniform Commercial Code to the facts of the case, or more particularly, on the application of Article Two, NMSA 1978, Sections 55-2-101 to -2-725 (Orig.Pamp & Cum.Supp.1989). Thus we disagree with neither CBC's nor the trial court's discussion of Article Two and the application of Article Two to the facts of this case. What we disagree with is the trial court's making legal conclusions on issues which appear to us to be clearly in dispute. From our reading of the record, we cannot conclude that CBC has shown "that there is no genuine issue as to any material fact and that [CBC] is entitled to a judgment as a matter of law." SCRA 1986, 1-056(C).

For example, Clower's cavalier attitude in receiving cattle without studying shipping documents or asking for a bill of sale, or without making any inquiry about whose brand he was being asked to put on the cattle, raises a serious question in our minds whether Clower was a buyer in the ordinary course of business as the trial court ruled. As the Code requires, a buyer in the ordinary course of business must be "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course * * *." NMSA 1978, § 55-1-201(9). We think the factfinder might find that Clower should have been alerted by the peculiar facts surrounding Dean's transfer of the cattle to him to have made inquiry concerning ownership of the cattle.

Likewise, Clower's somewhat furtive conduct in dealing with CBC and his failure to perform various of his contractual obligations pertaining to the cattle would permit the trier of fact to consider as unresolved the issue of Clower's good faith with respect to his purchases of cattle from Dean. The entire climate of Clower's conduct raises questions concerning his knowledge of Dean's underlying purpose in selling Clower the cattle. Good faith is defined as "honesty in fact in the conduct or transaction concerned." *Id.,* (19). In *McKay v. Farmers & Stockmens Bank of Clayton,* 92 N.M. 181, 585 P.2d 325 (Ct. App.), *cert. quashed,* 92 N.M. 79, 582 P.2d 1292 (1978), involving proof of good faith for purposes of permitting a bank's acceleration of promissory notes, it was held that "'good faith' is not generally a question of law, but is usually a question of fact." *Id.* 92 N.M. at 183, 585 P.2d at 327.

In *McKay* the court of appeals reversed a summary judgment awarded to a bank that argued it had exercised good faith in declaring itself insecure and foreclosing on certain secured chattels. The court of appeals restated the long-standing rule on the granting of summary judgment by writing, "The question before us is whether the evidence in the entire record shows that there exists material issues of fact as to the Bank's good faith or lack of good faith in the acceleration of McKay's notes." *Id.* By analogous reasoning, in our opinion there exist material issues of fact as to Clower's good faith in dealing with Dean.

We likewise agree with Runyan that a material issue of fact remains concerning whether Clower's status was that of a cattle merchant or an ordinary buyer. The trial court should have inquired into Clower's failure to produce any documents he may have had detailing his past dealings in cattle sales. Such documents were relevant to the court's resolution of the motion because the Code holds merchants to a higher standard than ordinary purchasers when it comes to good faith, demanding of merchants "the observance of reasonable commercial standards of fair dealing in the trade." NMSA 1978, § 55-2-103(1)(b).

CBC argues that our holding in *O'Brien v. Chandler*, 107 N.M. 797, 765 P.2d 1165 (1988), is supportive of its position on appeal. Because we decide this case on the procedural question of whether material issues of fact remain to be resolved rather than on the substantive questions argued by the parties, we pass no judgment at this point on the relevance of *O'Brien*, as there was no question that the defaulting purchaser, Chandler, entered into a transaction with a *good faith* purchaser for value, the bank. Here Runyan has raised a reasonable challenge to Clower's good faith in his dealings with Dean. Further, in *O'Brien*, McCoy's interest in the cattle was obviously "hidden" from the bank. Here, Runyan has raised a reasonable challenge to Clower's good faith in his dealings with Dean. It is more doubtful that Runyan's interest in the cattle was hidden from either Clower or CBC, or at least, such is the lingering issue of material fact left to be resolved.

Without examining every remaining point raised by Runyan on appeal, we hold he sufficiently has demonstrated that this case should be remanded for proof on the issues raised in the pleadings. At trial, Runyan might not prevail; but here, as the party opposing the motion, he should have been given the benefit of all reasonable doubts by the court in its determination of whether genuine issues exist to be tried. *See Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Because the court did not give Runyan that benefit, we reverse and remand the case to the trial court for further proceedings not inconsistent with our opinion herein.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.