## THE CADLE COMPANY *vs.* RAYMOND E. DEVINCENT.

No. 00-P-497.

Middlesex. May 16, 2002. - January 6, 2003.

Present: LAURENCE, COWIN, & GREEN, JJ.

*Negotiable Instruments,* Note, Holder in due course, Defenses, Indorsement. *Guaranty.*

In an action brought by the holder of a promissory note against the guarantor of the note, summary judgment entered in favor of the holder of the note on the ground that the note was an independent instrument was inappropriate, where a genuine question of material fact existed as to whether the note was independent of a certain line of credit such that the guarantor of the note was entitled to an opportunity to establish at trial that the two were related, and that a material breach of the credit line agreement damaged the borrower in a manner that would relieve the borrower (and, thus, the guarantor) from what otherwise would have been its contractual obligation to repay. [15-18]

CIVIL ACTION commenced in the Superior Court Department on May 30, 1995.

The case was heard by *Margot Botsford,* J., on a motion for summary judgment, and a hearing for assessment of damages was had before her.

*William M. Clark* for the defendant.

*Robert F. Tenney* for the plaintiff.

COWIN, J. The defendant, Raymond E. DeVincent, a guarantor of a promissory note in the amount of $125,000, appeals from a summary judgment entered by a Superior Court judge in favor of the plaintiff, The Cadle Company, the holder of the note. We construe the defendant's argument as asserting that summary judgment was improper in light of disputed questions of material fact, particularly (a) whether the original lender (the plaintiff's assignor) violated a term of a lending agreement; and (b) if so, whether the promissory note was sufficiently related to

the breached lending agreement to make the breach a defense to the note. The defendant contends further that summary judgment should be entered in his behalf, and that, even should he not prevail on the merits of his appeal, the sum of $4,125 should be deducted from the attorney's fee award to the plaintiff because that figure represents an improperly speculative estimate of future fees and costs. We conclude that disputed questions of material fact preclude the entry of summary judgment, and therefore reverse.

1. *Material facts and prior proceedings.* Except as otherwise indicated, the following facts are not disputed. Maple Court Realty Trust (Maple Court) was created in 1986 to purchase an 82-unit apartment complex in Keene, New Hampshire. Maple Court had two trustees, James J. Bomba and Anthony A. Inglese, and a total of ten investors, including the defendant. In 1989, Maple Court obtained from BayBank Middlesex (the bank) a line of credit in the amount of $125,000 for the purpose of financing the conversion of the apartments into condominiums. To secure the credit line, the defendant and Robert Eaton, Jr., another investor, each gave a personal guaranty to the bank, in which each guaranteed the payment of all obligations of Maple Court to the bank "now or hereafter at any time owing by [Maple Court] to [the bank]."[1]

In opposition to summary judgment, the defendant offered evidence that, prior to the initial draw by Maple Court against the line of credit, the trustees demanded and received from the bank a condition to the loan agreement that funds could be drawn on the line only with the signatures of both Maple Court trustees. This was denied by the plaintiff.[2] In any event, an initial draw of $20,000 was authorized jointly by the trustees, Bomba and Inglese, on or about May 19, 1989. Thereafter, the remainder of the $125,000 credit line was advanced in periodic

---

[1]Eaton, a named defendant below, has declared bankruptcy and is not a party to the present appeal. Bomba (who defaulted), Inglese, and the Maple Court Realty Trust were also defendants below but have not participated in the appeal. For convenience, in this opinion we refer to the appellant Raymond E. DeVincent as the defendant.

[2]The alleged document regarding authorization of draws was not made part of the summary judgment record and is not before us.

draws, but upon the sole request of Bomba and without accompanying written authorization by Inglese.

On or about August 28, 1991, Bomba, as trustee of Maple Court, executed and delivered to the bank a promissory note in the amount of $125,000 due, with interest, on or before November 4, 1991. No additional funds were advanced by the bank in return for the note. Subsequently, Bomba informed the Maple Court investors that the funds drawn on the line of credit had been put into the operations of Maple Court in an effort to keep the enterprise afloat. No condominium conversion took place, and Maple Court defaulted on the August 28, 1991, promissory note.

On or about June 15, 1994, the bank assigned the Maple Court promissory note and the guarantees of Eaton and the defendant to the plaintiff for value. The plaintiff made a demand on Eaton and the defendant for the $125,000 principal due on the note, together with interest and the costs of collection. No payment was made, and the plaintiff commenced this action. In allowing the plaintiff's motion for summary judgment, the judge concluded that, even assuming that two trustees' signatures were required to authorize draws against the line of credit, the promissory note was a separate instrument, and the defendant had not satisfied his burden of producing sufficient evidence that there was a defense thereto to warrant a finding in his favor on the issue. In the judgment, the judge added interest in the amount of $59,942.40, and attorney's fees and costs in the amount of $21,318.10. The latter sum contains a component of $4,125 for fees and costs associated with anticipated postjudgment remedies.

2. *Discussion.* We begin with the assumption by the judge that two trustees' signatures were required in order to authorize draws against Maple Court's line of credit from the bank. While there is no written credit agreement in the record to confirm such a requirement, there is evidence in the form of the affidavit and deposition testimony of Anthony Inglese that the trustees had in fact insisted upon and received such a safeguard. In the absence of a writing governing the credit line agreement, the Inglese evidence is sufficient to create a dispute of fact with respect to a material issue, thereby justifying the judge's

examination of the question whether a violation of the two-signature requirement by the bank would relieve the defendant guarantor of liability with respect to that portion of the funds advanced solely on Bomba's authorization (i.e., $105,000).[3]

Having obtained the note after its maturity date, the plaintiff does not enjoy the status of a holder in due course, G. L. c. 106, § 3-302(1)(*c*),[4] and holds the instrument subject to existing defenses. See *Industrial Natl. Bank of R.I.* v. *Leo's Used Car Exch., Inc.*, 362 Mass. 797, 800 (1973). The defendant, having executed a separate contract of guaranty, rather than a guaranty that is part of the note, is governed by the provisions of that separate contract without immediate reference to the law governing negotiable instruments. See *Pemstein* v. *Stimpson*, 36 Mass. App. Ct. 283, 289-290 (1994). The defendant guaranteed payment of the "liabilities" of the borrower, thereby indicating that, should there be no liabilities by virtue of existing defenses, no payment by the guarantor would be required. While the guaranty in this case waives certain defenses, it does not waive the defense at issue. Consequently, the defendant is entitled to assert that defense against the holder of the note. There being no dispute that the promissory note is authentic, the defendant, in order to avoid liability thereon as guarantor, has the burden of establishing that the maker has that defense. G. L. c. 106, § 3-307(2). See *Coupounas* v. *Madden*, 401 Mass. 125, 129 (1987).

Here, the defendant asserts that the promissory note and the preceding line of credit were merely aspects of the same transaction, or, in other words, that the note reflected the fact that the credit line was drawn down in its entirety and that the total of $125,000 in principal was then owed by Maple Court. Accordingly, the defendant argues that the bank's failure to comply with the two-signature restriction regarding advances against the credit line created a defense to a claim for repayment of the

[3]The defendant concedes that he is liable to repay the $20,000 advance made on or about May 19, 1989, given that those funds were drawn pursuant to authorization by both trustees.

[4]The case arose prior to the 1998 amendments to art. 3 of the Uniform Commercial Code in Massachusetts, see St. 1998, c. 24, § 8, and we thus refer in this opinion to G. L. c. 106 as in effect before those amendments.

improperly advanced amounts, and thus also created a defense to the related promissory note that arose as a result of those same advances.

The judge rejected this proposition, stating, "the [promissory note] was a separate instrument. The [n]ote contains no language that it is conditional nor is there any suggestion that Bomba's signature is not genuine." The promissory note was indeed a document that was separate from whatever documentation governed the credit line, and the note does not refer to the credit line or to any potential defense. But it does not follow inevitably that the note and the credit line were independent of each other. If the note and the documentation governing the credit line "were in essence part of one transaction, they must be read together to effectuate the intention of the parties." *Chase Commercial Corp.* v. *Owen*, 32 Mass. App. Ct. 248, 250 (1992).

Whether the two were related sufficiently that a defense to one would be a defense to the other calls for a finding of fact. Given that the amount of the note equaled the amount of the advances against the line of credit; given the times of the respective transactions; given that the bank advanced no new funds against the note; and given that Maple Court did no other business with the bank, the record raises a question of fact whether the note was simply the documentation of a prior obligation to repay $125,000 already advanced. Consequently, summary judgment on the ground that the note was an independent instrument was inappropriate.[5] There being a genuine question whether the note was independent of the credit line, the defendant is entitled to an opportunity to establish at trial that the two were related, and that a material breach of the credit line agreement damaged the borrower in a manner that would relieve the borrower from what otherwise would have been its contractual obligation to repay. See *Quintin Vespa Co.* v. *Construction Serv. Co.*, 343

---

[5]Our conclusion disposes of the defendant's contention that he should have received summary judgment because the breach of the credit line arrangement and the interdependence of the credit line and the promissory note have been established as matter of law.

Mass. 547, 554 (1962); *Lease-It, Inc.* v. *Massachusetts Port Authy.*, 33 Mass. App. Ct. 391, 396 (1992).[6]

3. *Disposition.* The judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[6]In light of our disposition, it is unnecessary to address that portion of the defendant's appeal that relates to the award of attorney's fees and costs.