SECURITY STATE BANK, Pharr, Texas,
Plaintiff-Appellee,

v.

Paul A. BATY, Defendant-Appellant.

No. 202–69.

United States Court of Appeals,
Tenth Circuit.

March 22, 1971.

Burton J. Johnson, Oklahoma City, Okl. (Watts, Looney, Nichols & Johnson and Robert L. Huckaby, Oklahoma City, Okl. on the brief), for plaintiff-appellee.

Howard B. Austin, Oklahoma City, Okl. (Perry H. Winn, Oklahoma City, Okl., on the brief), for defendant-appellant.

Before PICKETT, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

A frustrated plan to obtain Mexican silver pesos has produced a tangle of legal problems. Payment on two $10,000 checks, given by defendant-appellant Baty for the pesos, was stopped after plaintiff-appellee Security State Bank of Pharr, Texas, had paid out the amount of the checks. The bank brought a diversity action in the Western District of Oklahoma against Baty and secured a jury verdict in its favor. Baty appeals from the judgment entered against him for $20,000 plus interest.

Baty, a Lawton, Oklahoma, business man, collects coins. McClung, a coin dealer, met one Zambrito who represented that he could get Mexican silver pesos more cheaply than any one else. Baty and McClung joined forces in a venture to be financed by Baty. McClung was to seek out, inspect, and receive the pesos. They expected a $4–5,000 profit. Baty who had an inactive account at the First National Bank of Apache, Oklahoma, phoned Tom Manar, the president of that bank, and said: "Tom, I would like to write a couple of checks through your bank and am buying some merchandise and when they reach you, you telephone me and I will bring up the money to cover them." At the request of Zambrito and his associate Floyd Park, Baty signed two checks for $10,000 each, drawn on the Apache Bank and payable to Floyd Park.

On December 7, 1965, McClung delivered the checks to Park and asked that they not be cashed because they would not be honored until he [McClung] had inspected the coins. Park took the checks to the Security Bank where he had been a customer for several months and where he had a "medium three figure account." He told Norris, the executive vice-president of the Security Bank, that he had a backer in Oklahoma and was going to Mexico on a coin deal. He asked that the checks be cashed and that he be given Mexican pesos. At the same time he gave Norris a slip of paper with the name of Tom Manar on it and suggested that Norris call Manar to see if the checks were good.

After verifying the name, Norris called Manar and asked if the checks in question would pay. Manar replied: "Mr. Baty has made arrangements to cover the checks when they arrive." On the strength of the phone call, Security Bank credited Park's account with the $20,000 and on the same day paid him the equivalent in Mexican pesos. The checks passed through regular banking channels and in due course arrived at the Apache Bank. Manar told Baty of their arrival and Baty said that the merchandise had not been received but was expected and that he would come up and cover the checks. On the next day Manar told Baty that the checks would have to be covered or returned and at Baty's request returned them marked payment stopped.

Subsequent events are interesting but not pertinent to the legal problems. Among other things Baty and McClung met Zambrito and Park in Mexico City in an effort to revive the transaction but negotiations collapsed. Security Bank brought the instant suit. Zambrito, when his deposition was taken in Texas, asserted Fifth Amendment rights in refusing to answer material questions. Park has apparently departed for foreign climes.

Three months after the pre-trial conference and less than one month before trial, Baty moved for the transfer of the cause to the Southern District of Texas for the convenience of parties and witnesses, and waived objection to lack of jurisdiction in the transferee district. The court noted that the suit could not be brought against other nonconsenting defendants in the Texas district and denied the motion. The reason given was proper. See Cessna Aircraft Company v. Brown, 10 Cir., 348 F.2d 689, 691, 692. The court did not abuse its discretion in denying the motion. See Wheeler v. United States, 10 Cir., 382 F.2d 998, 1001–1002.

Baty says that the court erred in not instructing the jury that constructive notice of a claim or defense precludes assertion of the status of a holder in due course. The instruction on notice is essentially taken from 12A Okl.St. Ann. § 3–304. The checks were complete and regular. The claim of constructive notice arises from the statements made by the president of the Apache Bank to the officer of the Security Bank. The latter had no knowledge of the transaction involving Baty, McClung, Zambrito, and Park except for Park's statement that he had an Oklahoma backer. Although the bank officials differed somewhat in their accounts of the telephone conversations, we find nothing therein which would be notice of any kind to the Security Bank that the checks were payable only on a contingency.

The Oklahoma statute, 12A Okl.St. Ann. § 3–304(1) (b) provides that a purchaser has notice of a claim or defense if he "has notice that the obligation of any party is voidable in whole or in part * * *." The court used this language in its pertinent instruction. We believe that on the record presented this is enough and that the instruction was proper.

The Security Bank deposit slip covering the checks bore the familiar printed notation that "All items are credited subject to final payment in cash or solvent credits." Baty argues that when the bank takes a deposit under such conditions and then pays cash for the checks before collection, it cannot be a holder in due course. The contention is specious. The limitation has to do with relations between the bank and its customer. It does not inure to the benefit of the maker of the check. In our opinion it has no bearing on the question of good faith.

The checks were made payable to Floyd Park and were so endorsed. A bank rubber stamp endorsement on the reverse side reads "Credit to the account of Floyd Park, Jr." Baty argues that the absence of endorsement by Floyd Park, Jr., somehow is a defect which should have put the Security Bank on notice. He relies on the Oklahoma statute, 12A Okl.St.Ann. § 3–203, relating to wrong or misspelled names. If that statute has any relevance, it favors the bank. The checks were credited to Floyd Park, Jr., and were before the jury. No question has been raised as to the identity of the payee. The discrepancy in the name had no effect on the issue of whether Security Bank was a holder in due course.

Objection is made to the instruction on custom and usage. One side produced testimony of custom and usage in Oklahoma and the other of custom and usage in Texas. The bankers from the two states were not in agreement. The position of Baty is that the court should have instructed that Oklahoma custom and usage prevailed. The checks were cashed by a Texas bank and an Okla-

homa bank refused payment. The court gave an instruction on custom and usage which we believe was fair to each side and was a proper statement.

Baty objects generally to the court's handling of objections to the instructions. The record convinces us that the requirements of Rule 51, F.R.Civ.P., and of our decision in Dunn v. St. Louis-San Francisco Railway Company, 10 Cir., 370 F.2d 681, were fully satisfied.

■■ Baty complains that the court excised portions of correspondence between Security Bank and Federal Deposit Insurance Corporation when that correspondence was admitted in evidence. The court has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect. The excised portions related to an address and reference to insurance and bonding. We find no abuse of discretion.

■ The parties took the deposition of Emil Spranz, a coin dealer, and the court refused to allow it in evidence. The deposition contained a general statement about transactions in Mexican silver pesos and an expression of the value of a list of coins submitted to the witness by Norris. The list was in no way connected with any transactions involving any of the parties or with the activities of Zambrito or Park. The witness placed a bullion value of $12,000 to $16,000 on the listed coins. We agree with the trial court that the deposition was irrelevant and immaterial. It was properly excluded.

■ In his opening statement to the jury, counsel for Baty said that he would show that the Security Bank did not use common sense in the check transactions. The court sustained an objection that the statement was argumentative. We agree. . The opening statement is no place for argument. During the trial, the court received evidence of custom and usage. The minor restriction on the opening statement did not prejudice Baty.

The final objection is to remarks of the court to counsel for Baty when Norris was called as a witness for Baty. Norris had previously testified for the plaintiff. The record shows that the court was trying to assist counsel. Nothing said was prejudicial to Baty's defense.

Affirmed.