0867

FIRST AMERICAN BANK OF VIRGINIA, Respondent v. The LITCH-FIELD COMPANY OF SOUTH CAROLINA, INC., (formerly known as Fairlane Litchfield Company, Inc.), Appellant.

(353 S. E. (2d) 143)

Court of Appeals

*Randall S. Hiller,* of *Hiller & McClain,* Greenville, *for appellant.*

*Daniel B. White* and *Elizabeth Owen Mann,* both of *Rainey, Britton, Gibbes & Clarkson,* Greenville, *for respondent.*

Heard Nov. 10, 1986.

Decided Feb. 2, 1987.

BELL, Judge:

First American Bank of Virginia commenced this action to recover as a holder in due course on a dishonored check on which the drawer, Litchfield Company of South Carolina, had stopped payment. The master in equity awarded First American $9,369.37 plus interest from the date First American received the returned check. Litchfield appeals. We affirm the award of $9,369.37, but reverse and remand on the issue of interest.

On September 9, 1983, Litchfield tendered a check for $13,711.11 to Jensen Farley Pictures, Inc. The check was drawn on Litchfield's account with Bankers Trust of South Carolina and made payable to the order of Jensen Farley. On September 16, Jensen Farley negotiated the check to First American with whom it had a checking account. First American gave Jensen Farley immediate credit on the check and forwarded it to Bankers Trust for payment. Unbeknownst to First American, Litchfield had, that same day, given Bankers Trust an oral stop payment order on the check. Three days later, on September 19, Jensen Farley withdrew all but $1,573.34 from its First American account. On September 21, Bankers Trust returned the Litchfield check to First American marked "payment stopped." The returned check reached the branch handling Jensen Farley's account on September

26. Coincidentally, that same day, First American received a second countermanded check, drawn by Consolidated Theatres, Inc., for which it had also credited Jensen Farley's account. After an unsuccessful attempt to obtain funds from Jensen Farley to cover the two countermanded checks, First American arranged for all checks subsequently deposited by Jensen Farley to be paid directly to it rather than credited to Jensen Farley's account. By December 5, First American recovered $16,501.06 in this way. First American applied $12,159.52 of these funds to the Consolidated Theatres check and $4,341.74 to the Litchfield check. First American then attempted to persuade Jensen Farley's president to sign a note personally guaranteeing the remaining debt, but was unsuccessful. On December 19, First American learned Jensen Farley was filing for bankruptcy, whereupon it immediately notified Litchfield that it owed $9,369.37 on the check. Despite repeated demands, however, Litchfield never paid First American.

On July 24, 1984, First American commenced this action to recover the balance due on the Litchfield check plus interest. Litchfield raised various defenses and set offs to First American's claim.

The case was referred for final decision to the master in equity. The master determined First American was a holder in due course and Litchfield was liable under its engagement to pay the amount of the draft upon dishonor. Consequently, the master awarded First American $9,369.37 and interest at eight and three-quarters percent from September 26, 1983.

Litchfield now raises the same defenses and set offs presented at trial and rejected by the master. Litchfield also appeals the date for commencement of interest.

I

The drawer of a check engages that upon dishonor he will pay the amount of the draft to a holder in due course. Section 36-3-413(2), Code of Laws of South Carolina, 1976. The drawer has the right to stop payment, but remains liable on the instrument to a holder in due course. Section 36-4-403 & comment 8; Section 36-3-413(2). Since Litchfield has conceded First American was a holder

in due course, Litchfield remains liable on the instrument unless it can establish a valid defense or set off.

## A.

Litchfield argues its liability was discharged by First American's failure to give timely notice the check had been dishonored. This defense is unavailing for two reasons.

First, failure to give notice of dishonor discharges a drawer only to the extent he is deprived of funds maintained with the drawee bank to cover the check because the drawee bank became insolvent during the delay. Sections 36-3-501(2)(b), 36-3-502(1)(b). A drawer is not otherwise discharged. In this case, Litchfield was not deprived of any funds in its account with Bankers Trust nor did Bankers Trust become insolvent during the delay. Thus, Litchfield is not discharged.

Second, notice of dishonor is excused when the party to be charged has himself countermanded payment. Section 36-3-511(2)(b). *Cf. FDIC v. Kirkland,* 272 S. C. 310, 251 S. E. (2d) 750 (1979). Since Litchfield ordered payment stopped, it was not entitled to notice of dishonor.

Litchfield agrues Section 36-3-511(2)(b) should apply only to notes, cashier's checks, or other instruments that would be presented directly to the maker. We see no basis for such a distinction. Article 3 of the Uniform Commercial Code governs checks except when its provisions conflict with Article 4. Section 36-4-102(1). Section 36-3-511(2)(b) refers to notice of dishonor of an "instrument," which means a negotiable instrument. *See* Section 36-3-102(1)(e). Litchfield's check was unquestionably a negotiable instrument. *See* Section 36-3-104(1), (2)(b). *See also Bank of Fort Mill v. Rollins,* 217 S. C. 464, 61 S. E. (2d) 41 (1950).

Litchfield argues strenuously that it is unfair to apply Section 36-3-511(2)(b) to the drawer of a check who has no means of knowing whether the check has been negotiated to a holder. This reasoning misses the mark. The maker of an outstanding negotiable instrument is presumed to know the instrument is subject to transfer to a holder in due course. *UAW-CIO Local #31 Credit Union v. Royal Insurance Co.,* 594 S. W. (2d) 276 (Mo. 1980). The drawer is

often without actual knowledge that his check has been negotiated, but that ignorance in no way diminishes the rights of a holder in due course. To hold otherwise would, as a practical matter, destroy the negotiability of a check.

For these reasons, we hold First American's delay in giving notice of dishonor does not discharge Litchfield's liability on the check. Other jurisdictions addressing this question have reached the same conclusion. *See Klein v. Tobatchnik*, 418 F. Supp. 1368 (S.D.N.Y. 1976), *modified on other grounds*, 610 F. (2d) 1043 ( (2d) Cir. 1979); *Suit & Wells Equipment Co. v. Citizens National Bank of Southern Maryland*, 263 Md. 133, 282 A. (2d) 109 (1971); *UAW-CIO Local #31 Credit Union v. Royal Insurance Co., supra; First National Bank of Trinity, Texas v. McKay*, 521 S. W. (2d) 661 (Tex. Civ. App. 1975).

## B.

Litchfield next argues it was discharged under Section 36-3-606(1), which provides:

> The holder discharges any party to the instrument to the extent that without such party's consent the holder
> (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

Litchfield claims it was discharged because First American impaired both its right of recourse and the collateral for the instrument.

Section 36-3-606 applies only where the party claiming discharge has a right of recourse against a person who is liable on the instrument or has given collateral

for it. "Recourse," as applied to checks, means the right of a holder or an indorser, upon dishonor, to require the drawer or any prior indorser to pay the instrument according to its tenor at the time it was drawn or indorsed by that person. *See* Sections 36-3-507, 36-3-413, 36-3-414. The drawer, as the party ultimately liable to pay the instrument, has no recourse against the payee, any subsequent indorser who takes up the instrument, or the holder. In this case, Litchfield, as drawer of the check, had no right of recourse against Jensen Farley. Thus, Litchfield is in no position to claim discharge under Section 36-3-606.

## II.

Finally, Litchfield contends the master improperly awarded interest from September 26, 1983, the date the returned check arrived at First American's branch bank. Litchfield cites Section 36-3-122(4)(a) and argues interest does not commence against the maker of an instrument until demand is made, which was not done until December 19, 1983.

Section 36-3-122 treats makers of notes and drawers of drafts separately. *Compare* Section 36-3-122(1) *with* Section 36-3-122(3). As a result, the commencement of interest against drawers is governed by subsection (4)(b) rather than (4)(a). Section 36-3-122(4)(b) provides that interest runs "from the date of accrual of the cause of action." A cause of action accrues against a drawer "upon demand following dishonor." Section 36-3-122(3). Since the first demand after the dishonor occurred on December 19, 1983, First American's cause of action against Litchfield accrued on that date. Under the statute, the master should have awarded interest from December 19, 1983. Accordingly, we reverse the award of interest from September 26, 1983, and remand for entry of judgment awarding interest from December 19, 1983.

Affirmed in part, reversed in part and remanded.

CURETON and GOOLSBY, JJ., concur.